People v Fuentes (2025 NY Slip Op 05872)

People v Fuentes

2025 NY Slip Op 05872

Decided on October 23, 2025

Court of Appeals

Singas, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided on October 23, 2025

No. 79 

[*1]The People & c., Respondent,
v
Henry Fuentes, Appellant.

Amanda E. Schaefer, for appellant.
Karla Lato, for respondent.
District Attorneys Association of the State of New York, Scott Lockwood, The Legal Aid Society, amici curiae.

SINGAS, J.

:
This appeal asks us to determine whether the People provided the discovery required by CPL 245.20 (1) before filing a certificate of compliance (COC) and declaring their readiness for trial within the applicable speedy trial period. Specifically, we must decide whether the People's COCs were invalid because they failed to first disclose a police Internal Affairs Bureau (IAB) report concerning misconduct allegations against the arresting officer arising from an unrelated incident. We conclude that, even assuming CPL 245.20 (1) (k) (iv) requires the People to disclose such misconduct allegations, the People did so here, filed a valid COC, and timely declared their readiness for trial. Thus, we affirm, albeit on different grounds.
I.
The legislature's recent criminal discovery reforms "became effective on January 1, 2020, [and] constituted a sea change in speedy trial and discovery procedure" (People v King, 42 NY3d 424, 427 [2024]). They " 'imposed new automatic disclosure requirements' and 'tied these discovery obligations to trial readiness under CPL 30.30' " (id., quoting People v Bay, 41 NY3d 200, 208 [2023] [citation and brackets omitted]; see CPL art 245; L 2019, ch 59, § 1, parts KKK, LLL). Under the current statutory scheme, the People must disclose enumerated materials within 20 days of arraignment when the defendant is in custody, and within 35 days of arraignment when the defendant is [*2]not in custody (see CPL 245.10 [1] [a] [i]-[ii]; 245.20).[FN1]
After providing the required discovery, the People must file a COC averring that they have done so "after exercising due diligence and rendering reasonable inquiries" to locate and disclose discoverable materials (id. § 245.50 [1]). Filing a valid COC is a prerequisite to trial readiness (id. § 245.50 [3]). Thus, a court "must . . . grant[ ]" a defendant's motion to dismiss on statutory speedy trial grounds if the People have not filed a valid COC and declared ready for trial within the timeframe provided by CPL 30.30 (1).
The materials subject to automatic discovery are listed in CPL 245.20 (1), which—until August 7, 2025 [FN2]—provided that
"[t]he prosecution shall disclose to the defendant, and permit the defendant to discover, inspect, copy, photograph and test, all items and information that relate to the subject matter of the case and are in the possession, custody or control of the prosecution or persons under the prosecution's direction or control, including but not limited to [certain enumerated materials]."
Paragraphs (a) through (u) then list various discoverable materials, including, as relevant here, "[a]ll evidence and information, including that which is known to police or other law enforcement agencies acting on the government's behalf in the case, that tends to . . . impeach the credibility of a testifying prosecution witness" (former CPL 245.20 [1] [k] [iv]). For purposes of CPL 245.20 (1), "all items and information related to the prosecution of a charge in the possession of any New York state or local police or law enforcement agency shall be deemed to be in the possession of the prosecution" (CPL 245.20 [2]). CPL article 245 also contains a "[p]resumption of openness," "favor[ing] . . . disclosure when interpreting" section 245.20 (1) (CPL 245.20 [7]).
Separate from CPL article 245's automatic discovery obligations, due process requires the People, as articulated in Brady v Maryland (373 US 83 [1963]), to disclose evidence in their custody, possession, or control that is favorable to the accused, including evidence that "impeaches a government witness" (People v Garrett, 23 NY3d 878, 886 [2014] [internal quotation marks omitted]). "Impeachment evidence 'falls within the Brady rule' because, when used effectively, it 'may make the difference between conviction and acquittal' " (id., quoting United States v Bagley, 473 US 667, 676 [1985]; see also Giglio v United States, 405 US 150, 153-155 [1972]). While CPL article 245 requires covered materials to be disclosed within 20 or 35 days after arraignment (see CPL 245.10 [1] [a] [i]-[ii]), due process requires Brady material to be disclosed in time to give the defendant "a meaningful opportunity to use" it (People v Cortijo, 70 NY2d 868, 870 [1987]; see People v Steadman, 82 NY2d 1, 8 [1993]).
II.
Defendant was charged with misdemeanors arising out of an encounter with Suffolk County Police Officer Danielle Congedo resulting in his arrest.[FN3] On May 11, 2021, the People filed a COC and statement of readiness (SOR). The People's disclosures included a spreadsheet indicating that a lawsuit had been filed in federal court in January 2020 against Congedo. The spreadsheet provided the plaintiffs' names and the lawsuit's docket number. On July 28, 2021, the People turned over a copy of the complaint and amended complaint, the docket report, and a notice of the lawsuit, and filed a supplemental COC and SOR.[FN4] The amended complaint alleged that in June 2019, officers surrounded John and Frances Clemente's home with guns drawn after receiving 911 calls that John had been walking around his lawn with a gun. It further alleged that the defendant officers beat John, searched the home, and confiscated guns without probable cause, a warrant, or consent. Related to the allegations of an unlawful seizure, the complaint asserted that the defendant officers "demanded [that] Frances sign a 'consent to search' form only after they had searched the entire home."
On January 10, 2022, prior to a Huntley/Dunaway hearing where Congedo was the People's sole witness, defendant asserted that the People failed to comply with their disclosure obligations under CPL 245.20 (1) (k) (iv) because they had not provided material generated by the Suffolk County Police Department IAB regarding the incident with the Clementes. Four days later, defense counsel demanded, by letter, any outstanding Brady/Giglio material for Congedo. The letter specifically referenced the Clementes' lawsuit and asked for, among other things, information as to whether the IAB had made a finding regarding the alleged misconduct that the lawsuit described. That day, the People turned over an IAB report from the Suffolk County Police Department dated April 27, 2020, an updated docket report from the federal lawsuit, a letter indicating that the lawsuit had been resolved, and a second supplemental COC.
The IAB report indicated that an internal investigation was commenced based on the allegations in the federal lawsuit. The Clementes declined to be interviewed in conjunction with the investigation, and their perspective of the incident and allegations of misconduct were therefore drawn exclusively from their notice of claim and complaint. The IAB report indicated that Congedo had been accused of performing an "[i]llegal [s]earch/[s]eizure" but was "[e]xonerated." Specifically, the report determined that Congedo "completed a permission to search form documenting that on 6/13/19 at 2015 hrs. Frances Clemente gave permission to search her premises and all property found therein." The report also summarized Congedo's account of the incident. As relevant to the Clementes' search and seizure claim, it stated that Frances "gave written permission to search the house and wanted the police to remove the rifles from the house," and that Frances "provided the key to the gun locker and . . . opened the locker."
In February 2022, defendant moved to dismiss on statutory speedy trial grounds, arguing that the People's COCs and SORs were invalid and illusory. Defendant asserted that the People were obligated to turn over all IAB records for Congedo pursuant to CPL 245.20 (1) (k) (iv). Defendant also contended that the People failed to exercise due diligence and good faith in ascertaining the existence of discoverable materials and turning over such materials. District Court granted the motion, holding that "the People's filing of their [COC] and [SOR] were invalid until [*3]discovery was completed when the IAB files were turned over." As such, the People had exceeded the applicable 90-day speedy trial period (see CPL 30.30 [1] [b]).
The Appellate Term reversed, denied defendant's motion to dismiss, reinstated the accusatory instrument, and remitted the matter to District Court for further proceedings (see 81 Misc 3d 136[A], 2023 NY Slip Op 51399[U] [App Term, 2d Dept, 9th & 10th Jud Dists 2023]). The court concluded that "[i]t is undisputed that the contents of the IAB files at issue here are not 'relate[d] to the subject matter of the case' " and thus, "there were no IAB files here that were subject to automatic discovery" (2023 NY Slip Op 51399[U], *2, quoting former CPL 245.20 [1]).
A Judge of this Court granted defendant leave to appeal (see 41 NY3d 983 [2024]).
III.
The parties dispute which version of CPL 245.20 (1) applies to this appeal and the relevance and meaning of the statutory phrase "that relate to the subject matter of the case." According to defendant, CPL 245.20 (1) (k) (iv) covers all impeachment material and encompasses the People's Brady obligations, making any COC the People filed before disclosing the IAB report invalid. The People contend that the "subject matter of the case" language means that before filing a COC, they must turn over any impeachment evidence in their possession arising from the instant criminal case, whereas they must turn over any other impeachment evidence in their possession in time to satisfy their Brady obligations, which are not tethered to the COC requirement. We need not resolve these questions because under either version of the statute, and even assuming that CPL 245.20 (1) requires disclosure of misconduct allegations not arising from the facts underlying the instant prosecution, the People disclosed that information before filing their timely COCs.
Under both versions of the statute, the People's automatic discovery obligation extends to certain material that "tends to" impeach a prosecution witness's credibility. We have held that misconduct allegations against law enforcement officers, when relevant to a witness's credibility, are properly the subject of cross-examination for impeachment purposes (see People v Smith, 27 NY3d 652, 662 [2016] ["subject to the trial court's discretion, defendants should be permitted to ask questions based on the specific allegations of the lawsuit if the allegations are relevant to the credibility of the witness"]; see also People v Rouse, 34 NY3d 269, 275-276 [2019]; Garrett, 23 NY3d at 886). The People alerted defendant to the Clementes' misconduct allegations—which we assume, without deciding, were relevant to Congedo's credibility—with their timely COCs, by disclosing the docket number, complaint, amended complaint, docket report, and a notice of the Clementes' federal lawsuit.
The question, then, is whether not disclosing the IAB report before filing their timely COCs rendered those COCs invalid. We conclude that, under the facts of this case, it did not. The misconduct allegations set forth in the IAB report were drawn exclusively from the federal complaint and related materials, and the Clementes were not interviewed as part of the IAB investigation. The IAB report otherwise laid out Congedo's account of a purportedly lawful search and credited that account.
Defendant argues, and the dissent agrees (see dissenting op at 8), that the IAB report should have been turned over because it provides additional details about the incident with the Clementes beyond those in the amended complaint. But CPL 245.20 (1) (k) (iv) does not require production of a document just because it provides additional information not in other impeachment material. The question instead is whether the document "tends to . . . impeach the credibility of a testifying prosecution witness" (CPL 245.20 [1] [k] [iv]; see Smith, 27 NY3d at 662 ["specific allegations that are relevant to the credibility of the law enforcement witness must be identified"]; see also Black's Law Dictionary [12th ed 2024], tend ["To serve, contribute, or conduct in some degree or way; to have a more or less direct bearing or effect"], impeach ["To discredit the veracity of (a witness)"]). Here, the IAB report does not. Our conclusion is not based on any prejudice analysis, but on application of the relevant statutory language.
The IAB report includes notes from interviews with civilian witnesses, but none of those witnesses even mentioned Congedo or described misconduct.[FN5] As explained above, the report also contains information collected [*4]from an interview with Congedo herself recounting the events with the Clementes, including that she obtained Frances's uncoerced consent to search the home. But none of the notes from that interview—which recount Congedo's unremarkable account of a lawful search—would negatively impact her credibility. Finally, the dissent incorrectly describes the IAB report as "specif[ying] that the allegation against Officer Congedo concerned an illegal search/seizure" (dissenting op at 8). The report, like the dissent, may have surmised based on Congedo's interview that the generalized allegations in the amended complaint regarding the search and seizure likely referred to Congedo. Crucially, though, nothing in the report states that the Clementes ever identified Congedo's involvement or indicates that she engaged in any of the conduct alleged in the amended complaint. Because the IAB report did not contain any separate allegations of misconduct against Congedo nor any support for the amended complaint's allegations as they pertained to Congedo, it did not have any "tend[ency] to . . . impeach" her credibility (CPL 245.20 [1] [k] [iv]).
The dissent also contends that the IAB report had to be disclosed because it contains the allegations taken from the amended complaint, which themselves had to be disclosed (dissenting op at 9). The IAB report describes the amended complaint in general terms, such as "alleging false arrest, unlawful search and seizure and abuse of power" and asserting that "police searched [John's] home without consent and ordered his wife to open their gun safe." But to the extent that the dissent suggests that these allegations drawn from the amended complaint tended to impeach Congedo, the People undisputedly disclosed the source and full content of those allegations before filing the timely COCs. Thus, the IAB report itself has no impeachment value. This is not a prejudice consideration (contra dissenting op at 3-4, 10-11). Rather, CPL 245.20 (1) (k) (iv)'s "tends to . . . impeach" standard inserts considerations of evidentiary value into the disclosure requirement itself. Nothing in CPL 245.20 (1) (k) (iv) additionally requires the People to disclose every single document referencing impeachment material subject to disclosure based solely on that reference.
The People's timely COCs were thus not invalid, and the Appellate Term properly denied defendant's motion to dismiss. Because of our conclusion, we need not reach the People's argument that they exercised due diligence in obtaining and disclosing the IAB report.
Accordingly, the order of the Appellate Term should be affirmed.

WILSON, Chief Judge (dissenting):

The majority's opinion is a creative exercise in elision. For starters, the "encounter with Suffolk County Police Officer Danielle Congedo" isn't quite what it sounds. Henry Fuentes, then a teenager, enjoyed an unknown [*5]quantity of tequila, was unable to extricate himself from a toddler swing behind an abandoned house, and called 911 for help. Officer Congedo responded, and as she approached, she saw Mr. Fuentes toss the partially full bottle of Patron into some bushes. He appeared intoxicated; Officer Congedo extracted him from the swing and Mr. Fuentes retrieved the tequila. Officer Congedo offered to call an ambulance, Mr. Fuentes declined, but accepted a ride home from her, with the bottle of tequila in the trunk of the patrol car. Upon arriving home, Mr. Fuentes asked for the tequila; Officer Congedo refused, and Mr. Fuentes pushed her into her car, took her keys and jumped into the driver's seat. Officer Congedo called for backup and attempted to get her keys back; when the backup officers arrived, they removed Mr. Fuentes from the car, processed him at the precinct, and drove him home, returning him to his father.
As the majority notes, the People did turn over, appended to a supplemental certificate of compliance and statement of readiness, a copy of a federal complaint alleging that several officers beat the plaintiff in that case, searched his home, confiscated guns without probable cause, and obtained a signed consent from the plaintiff's mother only after the search was complete. Officer Congedo was one of the named defendants in the federal complaint. The majority, however, omits to mention that the complaint did not identify what acts Officer Congedo had allegedly taken, whereas the IAB report contains information that Officer Congedo's role was limited to obtaining the consent to search. The federal complaint provides unsworn allegations derived from the Clementes, who were the plaintiffs in that case; the IAB report contains a recitation of Officer Congedo's account of the incident, which cannot be found in that complaint. Finally, as the People explain, they did produce the IAB report before trial—just not before the Wade/Huntley hearing.
The second, and important, elision is really more like a sleight-of-hand. When one reads the above fuller account of what went on here, it would be impossible to conclude that Mr. Fuentes was prejudiced by the late disclosure of the IAB report. Indeed, that is the sole basis of the majority's argument: "Because the IAB report did not contain any separate allegations of misconduct against Congedo nor any support for the amended complaint's allegations as they pertained to Congedo, it did not have any 'tend[ency] to . . . impeach' her credibility" (majority op at 10). As a factual matter, I disagree with the majority's description of the IAB report. Nevertheless, nothing in the version of CPL 245.20 at the time of Mr. Fuentes' prosecution suggests that the People's discovery obligations as to any particular material could be measured against different information or documents they had previously produced. Instead, as I explain below, one of the principal revisions of the 2025 amendments to CPL 245.50 was to allow courts, when assessing whether the prosecution exercised due diligence in complying with its discovery obligations, to consider whether the prosecution's delayed disclosure of discovery was prejudicial to the defense. What the majority has done, without saying so, is engrafted the 2025 amendment's no prejudice factor on to the preexisting statute and rendered it dispositive of the outcome in the case.
Had the majority concluded that the 2025 amendments applied to Mr. Fuentes' appeal, it would have remitted the case to allow the trial court to consider whether the prosecution's delayed disclosure of the IAB report was prejudicial to Mr. Fuentes, perhaps weighing in favor of a finding that, under the totality of the circumstances, the prosecution complied with their automatic discovery obligations. But that rationale does not fit into the pre-2025 statute. Accordingly, I would reverse.
I.
As the majority observes, the legislature's 2019 criminal discovery reforms, which became effective on January 1, 2020, "constituted a sea change in speedy trial and discovery procedure" (People v King, 42 NY3d 424, 427 [2024]). In our decision in People v Bay, we explained the history of those amendments:
"In 2014, the New York State Justice Task Force proposed reforms to the discovery regime in light of concerns that available discovery is 'highly circumscribed' and 'often comes too late to permit both sides to investigate facts fully and make informed decisions before trial' (Report of the New York State Justice Task Force of its Recommendations Regarding Criminal Discovery Reform at 5 [2014]). Requiring early and broader disclosure, the Task Force concluded, would facilitate expeditious resolution of cases and better enable defense counsel to investigate and prepare for trial (see id. at 3; see also New York State Bar Association, Report of the Task Force on Criminal Discovery at 2 [2015]). Over the next few years, the legislature considered various discovery reform bills, and in the course of doing so, legislators [*6]noted that the existing scheme necessitated extensive exchanges of discovery demands, motions, and responses, and raised concerns about the limits on disclosure and the impact of discovery delays (see Assembly Mem in Support of 2019 N.Y. Assembly Bill A1431; Assembly Mem in Support of 2017 N.Y. Assembly Bill A4360A; NY Assembly Debate on 2019 N.Y. Assembly Bill A2009C, Mar. 31, 2019 at 336, 378, 443—444; NY Senate Debate on 2019 N.Y. Senate Bill S1509C, Mar. 31, 2019 at 2688—2690, 2714, 2802)" (People v Bay, 41 NY3d 200, 208 [2023]).
***
"To incentivize the People's compliance with these procedures, the enactments tie their discovery obligations to trial readiness under CPL 30.30 (see CPL 30.30 [5]; NY Senate Debate on 2019 N.Y. Senate Bill S1509C, Mar. 31, 2019 at 2615; People v. Gaskin, 214 AD3d 1353, 1353—1354 [4th Dept. 2023])" (id.).
Prior to the 2019 reforms, former CPL article 240 allowed a defendant to request various types of discovery. However, the only discovery subject to automatic disclosure under the former statute were those materials "required to be disclosed . . . pursuant to the constitution of this state or the United States" (former CPL 240.20 [1] [h]). Paragraph (h) codified our decision in People v Baxley, 84 NY2d 208, 213-14 (1994), which incorporates the federal requirements of Brady v Maryland, 373 US 83 (1963) and Giglio v United States, 405 US 150 (1972) (William C. Donnino, Practice Commentaries, McKinney's Cons Laws of NY, former CPL 245.20 [repealed]). Under the state and federal Constitutions, the prosecution must disclose to the defendant any information which is "favorable to the defense, material either to guilt or punishment, or affecting the credibility of prosecution witnesses" (Baxley, 84 NY2d at 213-14). Under the former statutory scheme, "nothing in the speedy trial statute linked CPL article 240's discovery obligations to the People's readiness for trial" (Bay, 41 NY3d at 207). That statutory feature "raised concerns about the limits on disclosure and the impact of discovery delays" and prompted the Legislature to pass the 2019 reforms (Bay, 41 NY3d at 208).
To increase fairness and efficiency, the Legislature repealed CPL 240.20 and enacted CPL article 245 in its place. The amendments expanded the type of discovery subject to pre-trial automatic disclosure and created a new compliance mechanism by tethering the People's discovery obligations to CPL 30.30's speedy trial requirements. Effective until August 7, 2025, CPL 245.20—titled "[a]utomatic discovery"—required automatic disclosure of "all items and information that relate to the subject matter of the case and are in possession, custody or control of the prosecution or persons under the prosecution's direction or control (former CPL 245.20 [1]). "[M]aterials possessed by a New York state or local police or law enforcement agency are deemed in the People's possession for purposes of the discovery requirements" (Bay, 41 NY3d 200, 209; see former CPL 245.20 [2]; see also former CPL 245.55 [1] [prosecution must take steps to ensure "a flow of information is maintained" with "the police and other investigative personnel"]).[FN1]
CPL article 245 also contains "a presumption in favor of disclosure" (former CPL 245.20 [7]). A few months after article 245 went into effect, the Legislature repealed Civil Rights Law § 50-a, so that police personnel records were no longer confidential.
The statute further enumerates 21 categories of material subject to automatic disclosure. As relevant here, subsection (k) requires disclosure of "[a]ll evidence and information, including that which is known to police or other law enforcement agencies acting on the government's behalf in the case, that tends to . . . impeach the credibility of a testifying prosecution witness" (former CPL 245.20 [1] [k] [iv]). As a textual matter, material that "tends to" impeach is necessarily broader than impeachment evidence subject to the Brady/Giglio "materiality" [*7]requirement. Moreover, an Assembly Memorandum in Support [FN2] of the amendments specified that section 245.20(1)(k) "occurs earlier than under current law, and is broader than under current law insofar as it abandons the requirement that only 'materially' exculpatory information need be disclosed" (Assembly Mem in Support of 2019 N.Y. Assembly Bill A4360A [emphasis added])[FN3]. The text coupled with the statute's legislative history make it clear that the Legislature deliberately repealed former CPL 240.20 and enacted CPL 245.20 to ensure the People automatically disclosed materials beyond those already required by the state and federal Constitutions. Moreover, by tethering the People's discovery obligations to CPL 30.30's speedy trial requirements, the Legislature intended that all material, including Brady/Giglio material, was turned over earlier—and with stronger incentives— than constitutionally mandated.
The majority's explanation does not satisfy the pre-2025 version of CPL 245.20. In the majority's view, the People satisfied their obligations by disclosing the docket number, complaint, amended complaint, docket report, and a notice of the Clementes' federal lawsuit; that disclosure satisfied the People's obligation to disclose the IAB report, because the IAB report does not provide additional impeachment value beyond the federal complaint (majority op at 8-9).
However, the IAB report is a different document from the federal complaint. Its impeachment value should not be measured against whatever else may have been produced: the pre-2025 statute provides no such exception. Moreover, there are several key differences between the information contained in the federal materials and that in the IAB report. Although Officer Congedo is named in the caption of the federal complaint, the factual allegations do not reference specific conduct by Officer Congedo. By contrast, the IAB report contains numerous details that are absent from the federal complaint. The IAB report specifies that the allegation against Officer Congedo concerned an illegal search/seizure and that Officer Congedo herself was the one to allegedly complete the permission to search form at issue in the federal complaint, includes notes from several interviews with five different civilian witnesses, and contains information collected from interviews with the arresting officers, including Officer Congedo. Although the majority summarily concludes that the information in the IAB report does not have "any 'tend[ency] to . . . impeach'" Officer Congedo (majority op at 10), "a judge's impartial determination as to what portions [of discoverable materials] may be useful to the defense, is no substitute for the single-minded devotion of counsel for the accused" (People v Perez, 65 NY2d 154, 160 [1985]).
In fact, the People did eventually produce the IAB report to Mr. Fuentes, so that it was in fact available for use at trial. Because the 2019 reform legislation in CPL 245.20 required the People to make initial disclosures that were inclusive of, but more expansive than, the People's preexisting obligations under Brady/Giglio, the People were also obligated under CPL 245.20 to produce the IAB report.
Even were we to assume, counterfactually, that the IAB report has no "'tend[ency] to . . . impeach" Officer Congedo beyond the disclosure of the federal materials, there is nothing in the statutory text to suggest that the Legislature intended the People to produce one document and not the other or to pick which of two different documents with impeachment value to produce. The statute mandates disclosure of "all evidence and information" [*8]that "tends to" impeach. The majority reads a limiting principle onto the statute that does not exist, nor does it provide a reasoned justification for doing so.
II.
A clear way to see the majority's error is to consider the 2025 amendments to CPL article 245, which went into effect while this case was on appeal on August 7, 2025. The 2025 amendments modify the standard under which the People's compliance is assessed for purposes of dismissal. Under the pre- and post-2025 amendments, CPL 245.50 (1) directs the People to file a COC after they have "provided the discovery required by subdivision one of section 245.20." Furthermore, the COC "shall state that, after exercising due diligence and making reasonable inquiries and efforts to ascertain the existence of, obtain, and disclose material and information subject to discovery, the prosecution has disclosed and made available all known material and information it has obtained subject to discovery" (CPL 245.50 [1]). Until the People file a "valid" certificate pursuant to CPL 245.50 (1), it "shall not be deemed ready for trial for purposes of section 30.30" absent a finding of special circumstances (CPL 245.50 [2]).
Before the 2025 amendments, we articulated the due diligence standard in People v Bay, 41 NY3d 200 (2023). We identified a list of relevant factors to assess whether the People exercised due diligence in satisfying its automatic discovery obligations (id. at 212). Most notably, we rejected the People's argument in Bay that, under the pre-2025 version of the statute, dismissal on speedy trial grounds required a showing of prejudice to the defendant (id. at 213). In the 2025 amendments to CPL 245.50, the Legislature codified many of the factors we identified in Bay, but also instructed courts to consider "whether the prosecution's delayed disclosure of discovery was prejudicial to the defense or otherwise impeded the defense's ability to effectively investigate the case or prepare for trial" (CPL 245.50 [5] [a]). "No one factor shall be determinative" and the court must consider "all factors listed in paragraph (a)" (CPL 245.50 [5] [b]).
The facts of this case illustrate the difference between the Legislature's choices and the majority's creation. Comparing the facts of this case, as I set out initially, and the contents of the IAB report, there is a substantial argument that Mr. Fuentes was not prejudiced by the late disclosure of the IAB report. Under the pre-2025 framework, as we held in Bay, that lack of prejudice did not enter into the equation. The Legislature addressed that question via the 2025 amendments, allowing consideration of a lack of prejudice as one factor in determining whether an accusatory instrument should be dismissed for statutory speedy trial reasons. Instead of honoring the Legislature's amendment (including its effective date), the majority has created its own amendment, reading an exception into the pre-2025 statute where one did not exist.
Although the majority's result is one that a trial court might reach on these facts under the new due diligence standard,[FN4] under the pre-2025 version of the relevant provisions, the majority's rationale has no justification in the text and is plainly contrary to our decision in Bay. If the majority's analysis under the former statute were correct, the Legislature would not have amended the statute to explicitly incorporate prejudice, or lack thereof, as a factor that courts must consider when assessing whether the People exercised due diligence in complying with its automatic discovery obligations.
III.
The majority concludes that Mr. Fuentes ultimately suffered no prejudice because, in the majority's view, the IAB report did not tend to impeach beyond the information already obtained in the federal materials. In doing so, the majority does not answer the question presented, which is whether the statute required the People to disclose the IAB report as part of its automatic discovery obligations. Instead, the majority jumps ahead to consider the effect of the IAB report after the People already produced the federal materials.
It surely is not our responsibility to rewrite a statute—particularly one that our coordinate branches of government have chosen to amend, while this appeal was pending, in a different way that allows for the majority's desired result here.
Order affirmed. Opinion by Judge Singas. Judges Garcia, Cannataro, Troutman and Halligan concur. Chief Judge Wilson dissents in an opinion, in which Judge Rivera concurs in all but section II.
Decided October 23, 2025 

Footnotes

Footnote 1:For belated disclosures—i.e., those outside CPL 245.10 (1) (a)'s 20- or 35-day window—the Court may impose appropriate sanctions (see id. § 245.80 [1]; Bay, 41 NY3d at 214).

Footnote 2: While this appeal was pending, the legislature amended CPL 245.20 (1) to provide: "The prosecution shall disclose to the defendant, and permit the defendant to discover, inspect, copy, photograph and test, all items the following material and information that relate to the subject matter of the case and are in the possession, custody or control of the prosecution or persons under the prosecution's direction or control, including but not limited to:" (L 2025, ch 56, § 1, part LL, § 2 [deletions struck through and additions in italics]). Paragraph (k), as amended, requires disclosure of "[a]ll evidence and information that relate to the subject matter of the case, including that which is known to police or other law enforcement agencies acting on the government's behalf in the case, that tends to . . . impeach the credibility of a testifying prosecution witness" (id. [deletions struck through and additions in italics]). The primary differences between the version at issue in this appeal and the amended version are that the phrase "relate to the subject matter of the case" was removed from CPL 245.20 (1) and inserted into CPL 245.20 (1) (k), and that the phrase "the following material and information" was added to CPL 245.20 (1).

Footnote 3: We omit an extended recitation of the facts underlying prosecution because they are irrelevant to the discovery issue and because defendant has not yet had a trial. The dissent's intimation otherwise (see dissenting op at 1-2) is baseless.

Footnote 4: We consider together all of the People's disclosures prior to their initial and first supplemental COCs (timely COCs).

Footnote 5: The civilian witnesses stated that "police surrounded the house." John came out "stumbling drunk" and "saying he had the same lawyer as President Trump." An officer told John to "[p]lease get down on your knees" and John "ignored the officer's commands" and "lunged at the officer who used force and brought [him] to the ground. "[I]t looked like [John] was resisting the police." "[John] started getting up and the officer pushed him
down and then handcuffed him." John was "bleeding from his head." Moreover, the witnesses stated that "the police acted very professionally" and did not "use[ ] excessive force."

Footnote 1:In People v Garrett, we held that knowledge of misconduct unrelated to the instant prosecution is not imputed to the prosecution since, in that circumstance, "the offending officer is not acting as an arm of the prosecution when he or she commits the misconduct and the agency principles underlying the imputed knowledge rule are not implicated" (889). CPL 245.20 (2) replaces the constitutional "imputed knowledge" standard with one where all materials possessed by law enforcement agencies, including IAB reports, are considered in the prosecution's possession for purposes of automatic discovery.

Footnote 2: Article 245 was passed as part of the budget and does not have its own Sponsors' Memoranda. However, in the 2019 Legislative Session, the same legislators, Senator Jamaal Bailey and Assembly Member Joseph Lentol, introduced discovery bills with identical language to the enacted version of CPL 245.20 (1) (k). Those memoranda are instructive here.

Footnote 3: The New York State Bar Association Discovery Task Force similarly concluded that "the 'materiality' limitation that is part of constitutional 'Brady' law is an appellate standard, which is entirely unsuitable in the pre-trial context. New York's discovery statute should explicitly reject any 'materiality' limitation on 'Brady' disclosure" (NYSBA, Report of the Task Force on Criminal Discovery [2015] at 22-26 [https://nysba.org/app/ uploads/2020/02/Criminal-Discovery-Final-Report.pdf]). CPL 245.20 (1) (k) did precisely what the Task Force recommended.

Footnote 4: Even if the majority could justify its decision under the post-2025 amendments, the new statute requires courts to consider all of the relevant factors in CPL 245.50 (5) (a). Whether the People's delayed disclosure of discovery was prejudicial cannot automatically be dispositive under the statute (CPL 245.50 [5] [b]).