People v Burke (2026 NY Slip Op 50346(U))

[*1]

People v Burke

2026 NY Slip Op 50346(U)

Decided on March 2, 2026

Justice Court Of The Town Of Orchard Park, Erie County

Pastrick, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on March 2, 2026
Justice Court of the Town of Orchard Park, Erie County

The People of the State of New York

againstKevin J. Burke, Defendant.

Docket No. 14060044

For the PeopleNicole Crossland, Esq.Erie County District Attorney's Office25 Delaware AvenueBuffalo, New York 14202For defendantPeter J. Todoro, Jr., Esq.Peter J. Todoro, Jr., P.C.388 Evans St.Williamsville, New York 14221

Michael J. Pastrick, J.

Defendant moves, pursuant to CPL 440.10 (1) (b) and (h), for an order vacating the judgment convicting him of driving while ability impaired (Vehicle and Traffic Law § 1192 [1]) based upon an alleged violation of his right, guaranteed by the Due Process Clause of the Federal Constitution, to discovery of favorable evidence in the People's possession that is material to guilt (see Brady v Maryland, 373 US 83 [1963]). For the reasons that follow, the court does not now rule upon the motion, and instead "must conduct a hearing and make findings of fact essential to the determination [of that application]" (CPL 440.30 [5]). I.The factual backdrop to this motion is not disputed. Defendant was arrested on May 31, 2014 and charged, in relevant part, with violations of Vehicle and Traffic Law § 1192 (3) (driving while intoxicated), § 1128 (a) (unsafe lane change), and § 1160 (b) (improper left turn). The report of the arresting officer reflected among other things, that she was traveling northbound on Abbott Road [in the Town of Orchard Park] when she observed the vehicle operated by defendant "traveling in [two] lanes" before it "proceeded to move into the turning lane and make a westbound turn onto [Milestrip Road]." That turn, the officer further noted, "was improper [because] defendant turned his vehicle into the northern most lane [of Milestrip Road] even though the inner most lane was readily available."
Those observations prompted the officer to stop defendant's vehicle, whereupon she discovered that defendant exhibited indicia of intoxication. Defendant acknowledged having "a couple of beers," at which point a lieutenant responded to the scene. Defendant subsequently failed three standard field sobriety tests and refused a roadside preliminary breath test before he was arrested with respect to the subject charges.
The matter then proceeded, as best this court can discern, into a discovery stage. During that phase of this matter, and while he was represented by initial defense counsel, defendant pleaded guilty in August 2014 to driving while ability impaired by alcohol (Vehicle and Traffic Law § 1192 [1]) in full satisfaction of the charges against him.

 II.
"[D]ue process requires the People, as articulated in Brady v Maryland (373 US 83, 83 [1963]), to disclose evidence in their custody, possession, or control that is favorable to the accused, including evidence that 'impeaches a government witness' (People v Garrett, 23 NY3d 878, 886 [2014] [internal quotation marks omitted])" (People v Fuentes, — NY3d —, —, 2025 NY Slip Op 05872, at *2 [Oct. 23, 2025]). "Impeachment evidence falls within the Brady rule because, when used effectively, it may make the difference between conviction and acquittal" (id. [internal quotation marks omitted]; see Giglio v United States, 405 US 140, 153-155 [1972]). 
Approximately eight months after defendant pleaded guilty, those principles prompted the Erie County District Attorney's office (ECDA) to tender to initial defense counsel a letter concerning the arresting officer. In that correspondence, ECDA indicated that the arresting officer had resigned from her employment, that such officer "was expected to testify as a witness for the People in several matters [then] pending [in this court]," and that the People were "aware of two . . . instances which reflect unfavorably upon [the arresting officer's] fitness to serve as a police officer."[FN1]
 An investigation by subsequent defense counsel further revealed that, during testimony given in a different criminal proceeding in a different court on May 28, 2015, the arresting officer invoked her Fifth Amendment privilege against self-incrimination while speaking to a vehicle and traffic issue that occurred on May 23, 2014, that is, one week before defendant's arrest in this matter.[FN2]

Consequently, based ostensibly on the aforementioned letter and an investigation of [*2]subsequent counsel, defendant now moves pursuant to CPL 440.10 (1) (h) for an order vacating the judgment of conviction on the ground that "[t]he judgment was obtained in violation of a right of the defendant under the constitution of this state or of the United States" (id.).[FN3]
That request, to the Court's understanding, is grounded in defendant's theory that the right, guaranteed by the Due Process Clause of the Federal Constitution, to discovery of favorable evidence in the People's possession which is material to guilt (see Brady v Maryland, 373 US 83 [1963]) was violated inasmuch as the People failed to disclose the alleged misconduct of the arresting officer, and that defendant's decision to plead guilty in this matter was infected by that omission. In that vein, defendant notes that the arresting officer "was the sole eyewitness to the operation of his vehicle," that "her credibility is questionable in light of her misconduct which the District Attorney acknowledged in other cases," and that "possession of [that] information would have altered [his] decision to plead guilty based on its likely impact at a suppression hearing and at trial."[FN4]

III.
Turning to the merits, defendant's challenge is rooted in Brady v Maryland (373 US 83[1963]), in which the Supreme Court of the United States "held that a criminal defendant's right to due process is violated when the prosecution suppresses favorable evidence that is material to guilt because every criminal defendant should 'be afforded a meaningful opportunity to present a complete defense' " (People v Hayes, 17 NY3d 46, 50 [2011], cert denied 565 US 1095 [2011], quoting California v Trombetta, 467 US 479, 485 [1984]). " 'The Brady rules is based on the requirement of due process,' and '[i]ts purpose is not to displace the adversary system as the primary means by which truth is uncovered,' but to ensure that the accused receives a fair trial" (People v Garrett, 23 NY3d 878, 884 [2014], quoting United States v Bagley, 473 US 667, 675 [1985]; see People v Bryce, 88 NY2d 124, 129 [1996]). "The People, in their role as truth-seekers in criminal trials, have a 'broad obligation to disclose exculpatory evidence,' but a mere breach of this duty does not offend the defendant's due process rights unless all the 'components of a true Brady violation are established' " (Garrett, 23 NY3d at 884-885, quoting Strickler v Greene, 527 US 263, 281 [1991]). "To make out a successful Brady claim, 'a defendant must show that (1) the evidence is favorable to the defendant because it is either exculpatory or impeaching in nature; (2) the evidence was suppressed by the prosecution; and (3) prejudice arose because the suppressed evidence was material' " (Garrett, 23 NY3d at 885, quoting People v Fuentes, 12 NY3d 259, 263 [2009]). 

***
At issue now is the second Brady factor, namely, whether the evidence was suppressed by the prosecution.
"Exculpatory or impeaching evidence is subject to Brady disclosure only if it is within the prosecution's custody, possession, or control" (Garrett, 23 NY3d at 886). Inasmuch as courts, for Brady purposes, have not interpreted "possession or control" narrowly, "the government's duty to disclose under Brady reaches beyond evidence in the prosecutor's actual possession" (id. at 887 [internal quotation marks omitted]). "Specifically, the duty encompasses evidence known . . . to police investigators [but] not to the prosecutor" (id. [internal quotation marks omitted]; see Strickler v Greene, 527 US 263, 381 [1999]), and " 'the individual prosecutor has [an obligation] to learn of any favorable evidence known to the others acting on the government's behalf in the case, including the police' " (Garrett, 23 NY3d at 887, quoting Kyles v Whitley, 514 US 419, 451 [1995]). 
There are, however, "limits to the extent exculpatory knowledge may be fairly imputed to the prosecution" (Garrett, 23 NY3d at 887). Indeed, "[a] police officer's secret knowledge of [their] own prior illegal conduct in [an] unrelated case [] will not be imputed to the prosecution for Brady purposes where the People had knowledge of [those] bad acts until after . . . trial" (id. [internal quotation marks omitted]). In those circumstances, "the offending officer is not acting as an arm of the prosecution when he or she commits the misconduct, and the agency principles underlying the imputed knowledge are not implicated" (id. at 889). 
Applying both those principles of law and the procedural rules for review of this application (see CPL 440.30), the court concludes that the motion is not determinable without a hearing to resolve factual questions attendant to the issue whether defendant's Brady rights were violated (see CPL 440.30 [1] [a]; CPL 440.30 [4] [d]).[FN5]
In so concluding, the Court acknowledges the sworn submissions of the People refuting defendant's contention with respect to alleged suppression of evidence. In the Court's view, however, defendant should be permitted to inquire as to the basis and grounds for those averments at the hearing to be held in this matter (see CPL 440.30 [5]). To the extent the Court concludes, following that hearing, that the subject evidence was suppressed, the parties will be afforded additional opportunity to address the question whether "prejudice arose because the suppressed evidence was material" (Garrett, 23 NY3d at 885 [internal quotation marks omitted]). 

 IV.
Accordingly, for all foregoing reasons, the court does not now rule upon the motion, and instead "must conduct a hearing and make findings of fact essential to the determination [of the [*3]application]" (CPL 440.30 [5]). 
Hon. Michael J. PastrickDated: March 2, 2026

Footnotes

Footnote 1:The People specifically explained that, in the first such incident, "in a [different] DWI case[, the arresting officer] testified that she observed [that] defendant's vehicle leave a parking lot and then spin completely around 360 degrees. The defense attorneys produced a copy of video surveillance of [that] defendant's car as it left the parking lot; while the car 'fish-tailed' it did not spin completely around as [the arresting officer] described under oath." The People added that, in the second such incident, the arresting officer "signed without permission the name of [a lieutenant] on one of the duplicate forms filed with [the arresting agency]."

Footnote 2:Although "a witness's refusal to testify on constitutional grounds does not, in and of itself, have any real probative significance, . . . it may have a disproportionate impact upon the mind[] of [a trier of fact] and may tend to create the impression that the witness is guilty of a particular crime" (People v Thomas, 51 NY2d 466, 472 [1980]).

Footnote 3:Defendant also seeks relief pursuant to CPL 440.10 (1) (b), which provides for vacatur of a judgment "procured by duress, misrepresentation or fraud on the part of the court or prosecutor or a person acting for or in behalf of a prosecutor." In the court's view, under these circumstances that is coterminous with the demand for vacatur grounded in CPL 440.10 (1) (h).

Footnote 4:Unstated, but implicit, in that contention is defendant's theory that a determination that the May 2014 traffic stop was unlawful (see People v Robinson, 97 NY2d 341, 349 [2001]; see also People v Hinshaw, 35 NY3d 427, 430 [2020]) would render evidence discovered thereafter—including that of his intoxication or impairment—inadmissible at trial pursuant to the "fruit of the poisonous tree" doctrine (see generally Wong Sun v United States, 371 US 471, 487-488 [1963]).

Footnote 5:The Court notes that the People do not meaningfully dispute that the disputed evidence would be "impeaching in nature" (Garrett, 23 NY3d at 885 [internal quotation marks omitted]). Indeed, impeachment evidence is embraced by Brady "because, when used effectively, it 'may make the difference between conviction and acquittal' " (id. at 886, quoting Bagley, 573 US at 676), "even if it is not material to the defendant's case" (Garrett, 23 NY3d at 886; cf. People v Martin, 240 AD2d 5, 9-10 [1st Dept 1998], lv denied 92 NY2d 856 [1998] [rejecting a Brady contention where, among other things, "(t)he undisclosed information (went) only to the officers' general credibility in a manner connected to defendant's factual guilt only in the most tangential way"]).