People v Whitney (2025 NY Slip Op 25248)

[*1]

People v Whitney

2025 NY Slip Op 25248

Decided on November 21, 2025

Criminal Court Of The City Of New York, Bronx County

David, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the printed Official Reports.

Decided on November 21, 2025
Criminal Court of the City of New York, Bronx County

The People of the State of New York,

against
Demetrius Whitney, Defendant.

Docket No. CR-013722-25BX

For the People: Darcel D. Clark, District Attorney, Bronx County (by Mimi C. Mairs, Esq.)
For the Defendant: The Legal Aid Society (by Samantha Brugger, Esq.)

Samuel L. David, J.

Pending before the Court is Defendant's motion to invalidate the People's Certificate of Compliance ("COC") and dismiss the information pursuant to CPL § 30.30. The motion presents for the Court's consideration the new affirmation requirement in CPL § 245.50(4)(c), and the steps the moving party must undertake to satisfy this obligation. Section 245.50(4)(c) was expanded by the New York State Legislature's 2025 amendments, which significantly modified the existing discovery framework in criminal cases. By requiring that the moving party attest to meaningful attempts to resolve discovery disputes prior to filing a motion, the new affirmation requirement reflects these statutory modifications and the Legislature's intent to prevent dismissals of cases due to technical or good faith discovery errors. To that end, amended CPL § 245.50(4)(c) compels the parties to make good faith efforts to resolve discovery disputes in a collaborative manner, with the aim of ensuring that they receive the discovery to which they are entitled, while at the same time reducing the burden on judicial resources.
Because the Court finds that Defendant failed to comply with the requirements of CPL § 245.50(4)(c), the Court DENIES the motion to dismiss the information.[FN1]
BACKGROUND & PROCEDURAL HISTORY
Defendant Demetrius Whitney is charged by information with one count of Forcible Touching (PL § 130.52[1]), a class A misdemeanor, one count of Sexual Abuse in the Third Degree (PL § 130.55), a class B misdemeanor, and one count of Harassment in the Second Degree (PL § 240.26[1]), a violation.
These charges arise out of events that allegedly occurred on or about April 15, 2025, at [*2]approximately 5:00 a.m., inside of 2260 University Avenue, in the Bronx. According to the information, the complainant was attempting to open the door to the entrance of the building where she resides when she encountered Defendant, a stranger. Defendant was standing in the vestibule of the building, using his body to block the door and prevent the complainant from opening the door. Defendant then grabbed the complainant's left breast with his hand, without the complainant's permission or consent. Defendant's conduct caused the complainant to experience annoyance and alarm and to fear for her physical safety.
The complainant reported this incident to the police. Police officers and detectives conducted an investigation, eventually focusing on Defendant. A photo array was conducted on May 6, 2025, with the complainant, and the complainant positively identified Defendant as the perpetrator.
Defendant was arrested on May 13, 2025. He was arraigned on May 14, 2025. At Criminal Court arraignment, the People served notice of the photo array administered on May 6, 2025. The People did not serve statement notice, nor have the People indicated that any property was seized from Defendant that the People intend to use at trial. The complaint was deemed an information at arraignment, bail was set, and the matter was adjourned to May 19, 2025, for the People's COC. On May 19, 2025, the People were not discovery compliant, and the matter was adjourned for the People's COC to June 5, 2025. The People were not discovery compliant on June 5, 2025, and the matter was adjourned to July 25, 2025, for the People's COC.
On June 16, 2025, the matter was advanced because the People were still not discovery compliant, and Defendant was released pursuant to CPL § 30.30(2)(b). The People filed and served a motion for a protective order off-calendar on July 7, 2025. When the parties appeared in Court on July 25, 2025, an attorney standing-in for counsel of record stated that the defense did not object to the motion, and the Court signed the protective order. The matter was adjourned to September 10, 2025, for the People's COC.
In the interim, on August 8, 2025, the People filed and served an automatic disclosure form ("ADF") and COC. On August 13, 2025, the People filed and served a statement of readiness ("SOR"). When the parties appeared on September 10, 2025, defense counsel withdrew a CPL § 30.30 motion she had filed off-calendar because she realized that she had overlooked the People's motion for a protective order, which temporarily stopped the running of the "speedy trial clock." However, defense counsel stated that she was still reviewing discovery — in particular, she cited Spanish-language body-worn camera — and might yet wish to bring a COC challenge. Pursuant to CPL § 245.50(4)(c)(i), the Court granted the defense's application for a good cause extension to file any such motion until September 26, 2025, due to the need defense counsel expressed to translate the body-worn camera from Spanish to English.
The Court then set a single motion schedule for Defendant's omnibus motion, including any substantive challenges to the People's COC. The matter was adjourned for decision to November 12, 2025, and subsequently administratively adjourned to December 1, 2025, after Defendant filed his reply almost three weeks late.[FN2]

LAW ON DISCOVERY
Beginning in 2019, the Legislature substantially revised the rules governing criminal [*3]discovery. The then-existing discovery statute was entirely replaced with a new article in the Criminal Procedure Law. Newly-added Article 245 creates a robust system of discovery, and it ties prosecutors' compliance with the new rules to prosecutors' CPL § 30.30 "speedy trial" obligation. Thus, discovery compliance is now a precondition for answering ready for trial and is therefore a prerequisite to stopping prosecutors' "speedy trial clock."[FN3]

On May 9, 2025, the Legislature enacted further modifications to CPL Article 245, which had already undergone revisions since 2019. These amendments ("the 2025 Amendments") "apply to all criminal actions pending on [August 7, 2025] and all actions commenced on or after such date." (L.2025, c. 56, pt. LL, § 8). Their purpose is to "streamline New York's Discovery Laws [to] prevent cases from being thrown out over technical errors and eliminate dismissals and disruptions that have adversely affected survivors of domestic violence and other serious crimes." (https://www.governor.ny.gov/news/fighting-recidivism-governor-hochul-announces-reforms-fy26-state-budget-improve-discovery) (last visited on August 8, 2025). Their "holistic approach [to evaluating discovery compliance] will replace the previous system that allowed for automatic dismissals based on any small discovery error, and will allow victims in New York to seek justice based on the merits of their case while ensuring a public safety system with true accountability." (Id.).
The 2025 Amendments clarified or otherwise modified a number of significant aspects of the new discovery regime. Among the most notable additions is that any defense challenge to a COC must be made within 35 days of service of the COC, assuming that an information or indictment has been filed, and "shall be accompanied by an affirmation" that counsel:
timely conferred in good faith or timely made good faith efforts to confer with the opposing party regarding the specific and particularized matters forming the basis for such challenge, that efforts to obtain the missing discovery from the opposing party or otherwise resolve the issues raised were unsuccessful, and that no accommodation could be reached.
(CPL § 245.50[4][c]).
By requiring an attestation with respect to these matters, the revised statute now imposes an affirmative obligation on defense counsel to make timely and good faith efforts to confer with the People. This aligns criminal discovery with its civil counterpart, which requires such conferral and attestation (see 22 NYCRR § 202.20-f). In particular, the affirmation requirement makes clear, that, just as in the civil context, "to the maximum extent possible, discovery disputes should be resolved through informal procedures," not motion practice (id.). In addition to the good faith conferral obligation, the new affirmation requirement creates two other prerequisites for the proper filing of a COC validity challenge, namely, "efforts to obtain the missing discovery from the opposing party or otherwise resolve the issues raised were [*4]unsuccessful, and [ ] no accommodation could be reached." (CPL § 245.50[4][c]).
Finally, by requiring an attestation similar to that mandated in the civil context, the Legislature plainly intended that counsel do more than simply parrot the statutory language in the affirmation. Rather, counsel must particularize their conferral efforts and would be wise to follow the requirements of the statute's civil counterpart (see 22 NYCRR § 202.7[c]) (counsel must "indicate the time, place and nature of the consultation and the issues discussed and any resolutions, or shall indicate good cause why no such conferral with counsel for opposing parties was held."). "The purpose of this [conferral and attestation] rule is to avoid the unnecessary expenditure of limited judicial resources in circumstances where the attorneys . . . could resolve ... the issues that would be raised in a motion [through constructive dialogue]." (Anuchina v. Marine Transport Logistics, 216 AD3d 1126 [2d Dept 2023]) (second set of brackets in original). Accordingly, civil courts, which are much more familiar with conferral requirements and discovery disputes, will deny discovery motions where good faith conferral efforts have not occurred (see 22 NYCRR § 202.20-f.; Anuchina, 216 AD3d at 1127-28).

DISCUSSION
In Defendant's view, "all of the procedural requirements of § 245.50(4)(c) have been satisfied." (Defendant Aff., at ¶ 16). The Court disagrees. Below, the Court reiterates the language of CPL § 245.50(4)(c), explains how the new statutory requirements may be satisfied, and discusses why it is evident they were not fulfilled in this case.
"Timely" and "Good Faith Efforts" to Confer
What constitutes a "timely" effort to confer, and what type of effort is undertaken in "good faith"? The statute sets forth a 35-day deadline for the filing of any COC motion. Thus, any conferral must give the People time to review the objections, reconnect with witnesses if necessary, and then communicate back to defense counsel before that deadline is reached. The aim is to provide enough time for conferral to resolve the discovery issues, or at least significantly narrow their scope. Without providing a strict timeline, initial attempts at conferral two to three weeks after the filing of a COC are clearly timely, whereas initial attempts at conferral within a week of the 35-day deadline are generally not. As to what constitutes "good faith," it means a conferral effort where counsel genuinely believes the purportedly missing material may be of some significance, and counsel enters into conversation with the assigned prosecutor in a sincere attempt to obtain the material, not simply to set the stage for a motion to invalidate the COC and dismiss the case on CPL § 30.30 grounds.
Here, the People filed their COC and ADF on August 8, 2025, which meant that any COC challenge would have been due by September 12, 2025. However, pursuant to the good cause extension granted by the Court, that date was extended to September 26, 2025. On September 15, 2025, defense counsel emailed the People for the first time regarding some of the defense's discovery issues, stating that she had "started her review" the day before, and asking the People to disclose "index pages" and several attachments to the police follow-up reports (commonly referred to as "DD5s"), which purportedly had not been disclosed or, in the defense's view, had been too heavily redacted (Defendant Aff., at Ex. A ["I started my review yesterday"]). The People responded that same day (see id.). The following day, September 16, 2025, defense counsel emailed the People a list of 13 discovery items, and the People responded to this email two days later, on September 18, 2025 (see id.). On September 19, 2025, defense counsel emailed the People that she had "finished her review," and set forth another list of items, numbered "14-31," stating, "Here are the remaining items we believe are missing." (Id.). [*5]Defendant then filed the present motion on September 26, 2025. The People's opposition includes an October 6, 2025, email with the People's responses to defense counsel's September 19, 2025, email, as well as additional discovery items attached (see People Opp., at Ex. 10).
Under these circumstances, the Court cannot find that Defendant made a timely effort to confer with the People. The People filed their COC on August 8, 2025, and the Court granted the defense a good cause extension until September 26, 2025, for the filing of any COC challenge. Yet defense counsel apparently waited until September 14, 2025, to even begin a substantive review of the People's discovery. Moreover, defense counsel's conferral first began on September 15, 2025, and then continued with additional emails on September 16 and September 19, 2025. Ultimately, defense counsel raised over 31 items of contested discovery one week before the motion deadline. This in turn required the People to confer with multiple detectives and police officers, re-review, re-share, and share various documents. Defense counsel provides no reason for waiting so long to confer with the People. This last-minute conferral, raising over 31 varied items of discovery a week before the COC challenge deadline, was clearly untimely, thwarting the informal resolution of discovery issues that the statute encourages.
Nor can it be said that defense counsel's conferral was undertaken with the "good faith" the statute contemplates. In one example, Defendant does not dispute that in the first instance he received almost all of the DD5s in the case. Nevertheless, apparently "index pages" for two sets of the DD5s, essentially tables of contents for the DD5s, were not included in the People's initial discovery. After defense counsel requested them on September 15, the assigned assistant district attorney ("ADA") provided them to defense counsel electronically 7 minutes later (see Defendant Aff., at Ex. A.). Even so, defense counsel maintains in her affirmation that these index pages should be a basis to invalidate the People's COC (see id. at 8). This sequence of events makes clear that defense counsel's conferral regarding the index pages was not solely, or even primarily, an effort to ensure that no substantive DD5s were missing by comparing the index pages to what the defense had received, but was instead intended from the outset to set the stage for a motion to invalidate the People's COC and dismiss the case.
In another example, defense counsel emailed the assigned ADA on September 16 objecting to redactions in a particular DD5 (see id. at Ex. A). The assigned ADA responded on September 18 that what has been redacted was "the complainant's name and address and date of [birth]" and "adequate contact information has been provided in an unredacted witness list." (Id.) Because Defendant is charged with an Article 130 offense, it is "black letter law" that this information, which relates to the identity of a sexual assault victim, is not subject to automatic discovery, even without the existence of a protective order (see CPL § 245.20[1][c]).[FN4]
Yet even after being advised of the specific contents of the redactions, defense counsel offers the redactions as yet another basis for invalidation of the People's COC in her affirmation (see Defendant Aff., at 10.). Once again, this demonstrates that defense counsel's conferral regarding the redactions was not done with the "good faith" the statute directs. Rather, it was apparently a [*6]foregone conclusion that no matter what had been redacted, defense counsel intended to cite the redactions as a reason for the Court to invalidate the People's COC.
"Efforts to Obtain the Missing Discovery . . . were Unsuccessful"
By the terms of the statute, where conferral has resulted in the defense obtaining the purportedly missing material, a COC validity challenge does not typically lie. This is because if defense counsel has obtained the material, then counsel is simply unable to make the appropriate threshold attestation.[FN5]
This precondition for COC challenges is not particularly surprising when considering the discovery regime as a whole. Given the way the discovery system is now constituted, if the defense received the material prior to the filing of a COC challenge, that necessarily means that it most likely received the material within just a few weeks of communicating the issue to the prosecution. Accordingly, a number of the due diligence factors are satisfied in the first instance: "the prosecutor's response when apprised of any allegedly missing discovery"; "whether the omission was corrected"; "whether the prosecution . . . took prompt remedial action without court intervention"; and "whether the prosecution's delayed disclosure . . . was prejudicial to the defense or otherwise impeded the defense's ability to effectively investigate the case or prepare for trial."[FN6]
(CPL § 245.50[5][a].)
Notably, the fact that a COC validity challenge generally cannot be made when the defense has received the purportedly missing discovery within the conferral period does not rob the defense of other remedies for purported discovery violations. The defense is still free to move for discovery sanctions under CPL § 245.80, and the "remedies or sanctions" available to the defense under that section include "dismissal of all or some of the charges" in the appropriate circumstances (CPL § 245.80[2]). All this is in keeping with a robust discovery regime that is designed to ensure fairness for defendants while directing the parties to resolve most discovery disputes themselves and guarding against unwarranted dismissal of large swathes of the court system's criminal docket.
In this case, during the conferral process, the People provided three of the disputed documents with their September 15, 2025, email response, and six of the disputed documents with their September 18, 2025, email response (see People Opp., at Ex. 5; Defendant Aff., at Ex. A). That is to say, defense counsel cannot properly attest that as to these items "efforts to obtain the missing discovery . . . were unsuccessful." (CPL § 245.50[4][c]). Defense counsel's CPL § 245.50(4)(c) affirmation is therefore to this extent defective, and the inclusion of these items in Defendant's motion is improper.
Other Efforts to Resolve the Issues were Unsuccessful and "No Accommodation Could Be Reached"
Even if the defense has not received the purportedly missing discovery during the conferral period, defense counsel must also attest that other efforts to "resolve the issues raised were unsuccessful, and [ ] no accommodation could be reached." (CPL § 245.50[4][c]). In other words, before a proper COC challenge can be made, all other reasonable avenues of redress must be exhausted. This exhaustion requirement underscores that it is the parties' obligation to settle most discovery disputes without involving the court. Only if no accommodation can be reached is court intervention appropriate. By the same token, if a reasonable accommodation is apparent and the parties have not explored it, a COC validity challenge is improper. Of course, this requirement implicitly places a burden on the prosecution as well: prosecutors must also seek to reach an accommodation with their defense counterparts — otherwise, defense counsel can properly aver that "no accommodation" could be reached because of prosecutorial intransigence.
Here, Defendant fails to show that other efforts to resolve the issues were unsuccessful and no accommodation could be reached; indeed, just the opposite is true. In the emails attached to the motion papers, the parties resolved and clarified many of the issues raised by Defendant. Compliance with CPL § 245.50(4)(c) requires a showing that the parties are at an impasse after good faith attempts to secure a resolution of any discovery disputes — but the email correspondence here shows that defense counsel rushed to confer with the People shortly before the motion deadline, and then hastily filed the present motion.
The redaction of the complainant's identifying information, discussed above, is illustrative: an accommodation was in fact reached. Namely, while the complainant's information was redacted from the DD5 in dispute, it was included in a separate witness list given to defense counsel. Nor did defense counsel explore the possibility of other such accommodations during the conferral process. For instance, in her September 19 email, defense counsel demanded "any attachments for IAB Log #[s]." She then simply listed the numbers for eleven IAB logs, which had been disclosed prior to the filing of the People's COC (see Defendant Aff., at Ex. A). IAB logs and their attachments are discoverable only to the extent they tend to impeach the credibility of a testifying prosecution witness (see CPL 245.20[1][k]; People v. Fuentes, — NE3d —, 2025 NY Slip Op 05872, at * 4-5 [Ct App 2025]). Nowhere in her communications with the assigned ADA did defense counsel specify particular IAB log attachments she was seeking, explain why any of these attachments were important to the defense, or otherwise attempt to engage in a dialogue with the People about this issue.
For all these reasons, the Court finds that Defendant did not fulfill the requirements of CPL § 245.50(4)(c) and therefore DENIES the motion to invalidate the People's COC.[FN7]

Speedy Trial Calculation
May 14, 2025 - May 19, 2025
Defendant was arraigned on May 14, 2025. However, according to the Court's records, the case was filed with the Court on May 13, 2025. The accusatory instrument was deemed an information at arraignment, bail was set, and the Court adjourned the matter to May 19, 2025, for the People's COC. This time is charged to the People (6 days).
May 19, 2025 - June 5, 2025
On May 19, 2025, the Court denied Defendant's application to alter the securing order for release under supervision and adjourned the matter for the People's COC to June 5, 2025. This time is charged to the People. (17 days)
June 5, 2025 - July 25, 2025
The People were not discovery compliant on June 5, 2025, and the matter was adjourned to July 25, 2025. However, the People filed and served a motion for a protective order on July 7, 2025. The filing of this motion stopped the running of the "speedy trial clock" pursuant to CPL § 30.30(4)(a). Thus, only the time between June 5, 2025, and July 7, 2025, is charged to the People. (32 days)
July 25, 2025 - September 10, 2025
When the parties appeared in court on July 25, 2025, defense counsel standing for counsel of record did not oppose the protective order motion, and the Court signed the protective order. The matter was adjourned to September 10, 2025, for the People's COC. On August 8, 2025, the People filed and served their ADF and COC, and on August 13, 2025, the People filed and served an SOR. As discussed above, the Court has found the People's COC to be valid, and therefore their SOR served to stop the "speedy trial clock." Accordingly, only the time between July 25, 2025, and August 13, 2025, is charged to the People. (19 days)
September 10, 2025 - November 12, 2025
When the parties appeared on September 10, 2025, defense counsel withdrew a previous CPL § 30.30 motion after realizing that the People had filed a motion for a protective order, which temporarily stopped the running of the "speedy trial clock." Defense counsel stated that she was still reviewing discovery and might yet wish to bring a COC challenge. The Court granted the defense's application for a good cause extension until September 26, 2025, to file any COC challenge. The Court further set a motion schedule for defense omnibus motions, to include any COC challenge, and adjourned the case for decision to November 12, 2025. The case was thereafter administratively adjourned to December 1, 2025, following the late-filing of Defendant's reply. This time is excludable for motion practice pursuant to CPL § 30.30(4)(a). (0 days)
TOTAL DAYS CHARGED: 74
Because the Court finds that 74 days are chargeable to the People, Defendant's motion to dismiss pursuant to CPL § 30.30 is DENIED.

DEFENDANT'S OMNIBUS MOTION
HEARINGS:
GRANTED: Wade hearing.
DENIED: Wade/Dunaway hearing. Defendant requests a Wade/Dunaway hearing. However, the "identification" at issue is the display of a photographic array to the complainant, i.e., a non-corporeal identification, which preceded Defendant's arrest. Photographic identifications are not typically subject to Dunaway hearings, and the defense does not assert any [*7]facts here that would warrant a departure from this straightforward principle. Accordingly, the requested for a Wade/Dunaway hearing is denied.
PRECLUSION: Referred to the trial court.
SANDOVAL/VENTIMIGLIA/MOLINEUX: Referred to the trial court.

CONCLUSION
Defendant's motion to invalidate the COC and dismiss the information pursuant to CPL § 30.30 is DENIED. The Court GRANTS a Wade hearing but DENIES a Wade/Dunaway hearing. Sandoval/Ventimiglia/Molineux applications are referred to the trial court.
Defendant's application for an extension of time to file additional motions is denied subject to rights under CPL § 255.20(3) to move for further leave upon good cause shown.
The foregoing constitutes the opinion, decision, and order of the Court.
Dated: November 21, 2025
Bronx, New York
SAMUEL L. DAVID, J.C.C.

Footnotes

Footnote 1:Defendant's motion for invalidation of the People's COC and dismissal was filed as part of Defendant's omnibus motion, which also requests various suppression hearings and other relief. Those other applications are addressed below as well.

Footnote 2:Defendant filed his motion on September 26, 2025, the People filed their opposition on October 9, 2025, and Defendant replied on November 4, 2025.

Footnote 3:The revision of New York's criminal discovery rules was the result of long-standing complaints that the prior discovery regime did not adequately protect the rights of criminal defendants. Indeed, robust discovery is both a matter of substantive justice and procedural integrity. It offends basic notions of justice for defendants to be subject to criminal prosecution without being provided the full array of information, documents, and other items central to their cases, whether inculpatory or exculpatory. In addition, in an adversarial criminal justice system, just outcomes are best ensured when defendants and their counsel have a "level playing field."

Footnote 4:"Information . . . relating to the identity of a . . . victim or witness of an offense defined under article one hundred thirty . . . of the penal law . . . may be withheld, and redacted from discovery materials, without need for a motion pursuant to section 245.70 of this article [the "protective orders" section]." (CPL § 245.20[1][c]).

Footnote 5:To be sure, a prosecutor may not file a COC where there is outstanding discovery the prosecutor could have obtained with the exercise of due diligence but failed to secure. That is to say, a COC cannot simply be filed as a "placeholder" to "stop the clock" where the prosecutor has failed to exercise due diligence with respect to missing materials. In that instance, a COC challenge may be proper even when the material has been disclosed during the conferral period.

Footnote 6:There will often be limited prejudice to the defense if the defense receives purportedly missing discovery within just a short time after it has completed its discovery review and provided objections to the prosecution.

Footnote 7:It is also plain from a review of the People's COC and the parties' papers and attached communications that evaluated in their "totality," the People's efforts evince the "good faith" and "due diligence" Article 245 requires. Defendant's voluminous list of purportedly missing and belatedly disclosed discovery is replete with items that are of limited significance and that contain information duplicated elsewhere (see CPL § 245.50[5][a]). In many instances, the items' relationship to the subject matter of the case is tenuous at best, or the items are clearly not even discoverable. In some instances, the items apparently do not even exist, or the items are contained in a sealed case of the Defendant's, which the defense is in a much better position to obtain than the People (see CPL § 160.50[1][d]; Matter of Katherine B., 5 NY3d 196 [2005]). Defendant's substantive objections to the People's discovery compliance are thus unavailing.