People v Stringer (2026 NY Slip Op 50005(U))

[*1]

People v Stringer

2026 NY Slip Op 50005(U)

Decided on January 8, 2026

Criminal Court Of The City Of New York, Bronx County

David, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on January 8, 2026
Criminal Court of the City of New York, Bronx County

The People of the State of New York,

againstMartez Stringer, Defendant.

Docket No. CR-015703-25BX

For the People: Darcel D. Clark, District Attorney, Bronx County
(by Chelsea Halsted, Esq.)
For the Defendant: The Legal Aid Society
(by Eli J. Massey, Esq.)

Samuel L. David, J.

Pending before the Court is Defendant's motion challenging the validity of the People's Certificate of Compliance ("COC") and moving for dismissal of the information pursuant to CPL § 30.30. The motion requires the Court to consider the scope of the discovery to which a defendant is entitled in light of the 2025 amendments to CPL Article 245 ("the 2025 Amendments").
The 2025 Amendments, and the pre-existing rules in Article 245, create a coherent and robust discovery regime. The new discovery scheme ensures basic fairness for criminal defendants by guaranteeing the provision of discovery without placing unreasonable burdens on the prosecution. Discovery is not intended to be a Sisyphean task that a prosecutor may never in fact accomplish, nor an endeavor to chase down every last piece of paper no matter how remotely connected to a case. At the heart of the new discovery regime is CPL § 245.20(1)(a)-(v) ("Automatic discovery"), a list of mandatory disclosures in criminal cases. These items are properly understood as "core discovery": the materials and information that are fundamental to a defendant's investigation and assessment of a case and to a defendant's preparation for trial.
In his motion, Defendant presents an extensive list of purportedly outstanding items of discovery. However, Defendant fails to demonstrate that these items relate to the subject matter of the case in any tangible or meaningful way. Because the items that Defendant raises are not core discovery falling within the ambit of CPL § 245.20(1)(a)-(v), the Court DENIES the motion to invalidate the People's COC and dismiss the information.[FN1]
BACKGROUND & PROCEDURAL HISTORYDefendant Martez Stringer is charged by information with two counts of Aggravated [*2]Harassment in the Second Degree (PL §§ 240.30[2], 240.30[1][a]), a class A misdemeanor, and one count of Harassment in the Second Degree (PL § 240.26[1]), a violation. 
These charges arise out of events that allegedly occurred on or about May 25, 2025, at approximately 1:02 p.m., inside of 567 East 149th Street, in the Bronx. At that time, the complainant allegedly received a voice note from Defendant, his ex-boyfriend. In the voice note, Defendant stated, in sum and substance, "IAM [sic] GOING TO KILL YOU BITCH." Defendant and the complainant were in an intimate relationship for seven years, and the complainant recognized the voice and telephone number to be those of Defendant. As a result of Defendant's conduct, the complainant experienced annoyance, alarm and fear for his physical safety.
Defendant was arrested on June 5, 2025, and arraigned on June 6, 2025. The matter was adjourned to July 21, 2025, for conversion and the People's COC. The People subsequently filed and served a supporting deposition dated July 18, 2025. During the July 21, 2025, court appearance, the complaint was deemed an information, and Defendant was arraigned. The Court adjourned the matter to September 8, 2025, for the People's COC.
In the interim, on August 26, 2025, the People filed and served their automatic disclosure form ("ADF"), COC, and statement of readiness ("SOR"). The People filed a supplemental COC ("SCOC") on September 4, 2025. The Court acknowledged these off-calendar filings on September 8, 2025. The Court then set a briefing schedule for Defendant's omnibus motion, including any COC challenge. The matter was ultimately adjourned to January 9, 2025, for decision.[FN2]

LAW ON DISCOVERY
Beginning in 2019, the Legislature substantially revised the rules governing criminal discovery. The then-existing discovery statute was entirely replaced with a new article in the Criminal Procedure Law. Newly-added Article 245 creates a robust system of discovery, and it ties prosecutors' compliance with the new rules to prosecutors' CPL § 30.30 "speedy trial" obligation. Thus, discovery compliance — good faith, diligent efforts to disclose the "automatic discovery" contained in CPL § 245.20(1)(a)-(v) — is now a precondition for answering ready for trial and is therefore a prerequisite to stopping prosecutors' "speedy trial clock."[FN3]

On May 9, 2025, the Legislature enacted further modifications to CPL Article 245, which had already undergone revisions since 2019. The 2025 Amendments "apply to all criminal actions pending on [August 7, 2025] and all actions commenced on or after such date." (L.2025, c. 56, pt. LL, § 8). The purpose of the 2025 Amendments is to "streamline New York's Discovery Laws [to] prevent cases from being thrown out over technical errors and eliminate dismissals and disruptions that have adversely affected survivors of domestic violence and other serious crimes." (https://www.governor.ny.gov/news/fighting-recidivism-governor-hochul-announces-reforms-fy26-state-budget-improve-discovery) (last visited on August 8, 2025). Their "holistic approach [to evaluating discovery compliance] will replace the previous system that allowed for automatic dismissals based on any small discovery error, and will allow victims in New York to seek justice based on the merits of their case while ensuring a public safety system with true accountability." (Id.).
The 2025 Amendments clarified or otherwise modified a number of significant aspects of the new discovery regime. Among the most critical:
(1) the People are permitted to file a certificate of compliance when they have exercised good faith and due diligence in seeking to obtain and disclose discoverable material; they need not in fact have obtained and disclosed all such material for their COC to be valid (CPL § 245.50[1]);(2) due diligence is to be assessed holistically by "look[ing] at the totality of the party's efforts . . . rather than assess[ing] the party's efforts item by item" (CPL § 245.50[5]); and(3) prejudice to the defense is a factor in assessing due diligence, as is whether any discovery purportedly missing at the time a COC was filed is "substantively duplicative" or otherwise "insignificant" (CPL § 245.50[5][a]).[FN4]
Notably, the 2025 Amendments include a provision that discourages invalidation of COCs: "Notwithstanding any other section of law to the contrary, a court shall not invalidate a certificate of compliance where the party has exercised due diligence and acted in good faith in making reasonable inquiries and efforts to obtain and provide the material required to be disclosed." (CPL § 245.50[6]). Nevertheless, "a COC cannot simply be filed as a 'placeholder' to 'stop the clock' where the prosecutor has failed to exercise due diligence with respect to missing materials." (People v. Whitney, — NYS3d — [Crim Ct, Bronx County 2025], 2025 NY Slip Op. 25248, *5, n.5 [Crim Ct, Bronx County 2025]).
The Core Discovery Framework
It is evident from the 2025 Amendments and the pre-existing rules in Article 245 that the "automatic discovery" requirements that the People must satisfy do not mandate the delivery to the defense of all items and information tangentially connected to a case. Instead, the extensive "automatic discovery" requirements in CPL § 245.20(1)(a)-(v) identify what this Court terms "core discovery": materials and information that are at the core of most criminal cases, and which a defendant and defense counsel require to fairly evaluate a case and decide how to proceed (see CPL 245.50[5][a] [focusing discovery on "the defense's ability to effectively investigate the case or prepare for trial."]). Where the People fail to disclose core discovery without satisfying the due diligence factors in CPL § 245.50(5)(a), the Court must deem the People's COC invalid and any accompanying SOR illusory, and, if the allotted speedy-trial time has run, dismiss the case pursuant to CPL § 30.30.[FN5]

On the other hand, invalidation of a People's COC is not warranted by the non-disclosure of generally peripheral items, which do not meaningfully impede the defense's ability to investigate and assess a case and decide how to proceed. Moreover, a defendant may raise legitimate discovery issues that do not implicate core discovery and a COC's validity. In some instances, the particular circumstances of a case may warrant discovery of additional items beyond core discovery. The statute allows for "discretionary discovery" upon the defense's motion, and the standard for such an application is not particularly onerous (see CPL 245.30[3]).[FN6]
Of course, a request for discretionary discovery seeks material beyond the People's [*3]core discovery obligation and therefore does not call into question a COC's validity.
DISCUSSION
I. DEFENDANT'S COC CHALLENGE
Defendant raises 14 sets of items as grounds to invalidate the People's COC and dismiss the information (see Defendant Aff., at 8-11). The Court will not address one category of materials, specifically the complainant's phone records, as Defendant did not confer with the People on this issue; as for the others, none of the items are core discovery under CPL § 245.20(1)(a)-(v) implicating the validity of the People's COC.[FN7]

Where possible, the Court groups some of the categories together below and considers them in turn.
"All Prior DIRS [Domestic Incident Reports]":[FN8]

Defendant notes that his entity report indicates that various DIRs exist with respect to him that were not disclosed. The People explain in their opposition that any additional DIRs that appear in Defendant's entity report do not involve the present complainant but instead memorialize purported incidents between Defendant and other people (see People Opp., at 15; Ex. A). Contrary to Defendant's blanket assertion that "DIRs are automatically discoverably [sic] under §245.20(1)(e) and (1)(k)," (Defendant Aff., at 18) to be discoverable under these subsections, they must be "related to the subject matter of the case." (CPL §§ 245.20[1][e], [k]). Clearly, these DIRs are in no way related to the subject matter of the case, as they do not involve the complainant all. In short, they simply are not core discovery implicating the validity of the People's COC.[FN9]

[*4]"All BWC [Body-Worn Camera]":[FN10]

The People confirmed in their September 15, 2025, email to the defense that there were no successful home visits, and therefore there is no home visit body-worn camera ("BWC"). More generally, the People further represented that there is no outstanding BWC for this case, which began when the complainant walked into a precinct to make a complaint (see People Opp., at Ex. A). Moreover, the Court notes that the paperwork and body-worn camera for successful home visits, which often occur weeks if not months after an alleged incident and are intended as safety checks, are typically not core discovery implicating a COC's validity. 
Unredacted And Complete Civilian Complaint Review Board ("CCRB") Case Materials For Testifying Police Officers:[FN11]

The People disclosed the CCRB histories for all testifying police officers (see People Opp., at 17), but the defense maintains that redactions in those CCRB histories and a lack of complete CCRB case materials for these officers are bases for invalidation of the People's COC. These contentions are meritless. The CCRB is not under People's "direction or control," nor, as a general matter, are its documents in the People's "possession, custody or control." (CPL § 245.20[1]). The CCRB histories are equally available to the defense online through the CCRB's publicly searchable database for police officers, and the defense may subpoena further materials from the CCRB.[FN12]
For these reasons, CCRB materials are not core discovery implicating a COC's validity.
Complainant's Redacted DAS Entity Report:[FN13]

Defendant objects to redactions in the complainant's entity report, stating that without a protective order, the People's redactions must be restricted to "a civilian witness's physical address [ ] and an individual's social security number or tax number" or to "information related to the identity of" a 911 caller; a confidential informant; or a victim or witness in a sex crimes case or a case where the defendant has a substantiated affiliation with a criminal enterprise (Defendant Aff., at 20). This assertion misstates the law. In fact, the 2025 Amendments make clear that the People are permitted to redact non-discoverable material without the need for a protective order (see CPL § 245.20[6]). 
Here, the People represent that they disclosed to the defense that the complainant has no criminal convictions and further that all information related to Defendant was left unredacted (see People Opp., at 16). Moreover, the People left the captions for the redacted material unredacted, and Defendant has not identified the specific material he would like unredacted or [*5]addressed why any of the redacted information would in fact be discoverable.[FN14]
For example, many of the redactions are clearly of pedigree information and related material — e.g. "phone numbers," "addresses," and "possible associates" — and are wholly unrelated to the subject matter of the case. In the absence of any specificity by Defendant regarding the redactions or any substantive explanation for why, in his view, the redacted material is discoverable, the Court finds that the redacted materials do not constitute core discovery under CPL § 245.20(1)(a)-(v) and are permissible.[FN15]

More generally, disputes over redactions in a document that has in fact been disclosed are not typically a basis for invalidation of a COC. Where the People have disclosed the document with the existence of redactions evident from its face, the People are usually operating with the required "good faith" and "due diligence." That is to say, in that instance, the People have necessarily revealed the existence of the document, and they are not withholding it. In addition, they have made it clear to the defense that they have redacted some portions. All these factors suggest that the People are acting in "good faith." And of course, the People have obtained the document in the first instance — i.e., they have exercised "due diligence." If necessary, a court may review the redactions and may end up directing the People to disclose additional portions of the document, but rarely will this be a basis to invalidate a COC.
"NYPD Online Prisoner Arraignment Database," "ZOLPA":[FN16]

In an abbreviated discussion, the defense by and large simply asserts that the "ZOLPA" form is automatic discovery but fails to substantively discuss why the information it documents is related to the subject matter of the case. The People, on the other hand, clarify that, "ZOLPA is a document that notes a defendant's location from police custody in the precinct to his release after arraignment and thus, does not contain information related to the subject matter of the case, making it not automatically discoverable." (People Opp., at 15-16).
The Court agrees that the "ZOLPA" form is not core discovery falling within the scope of CPL § 245.20(1)(a)-(v). As a general matter, it simply does not relate to the subject matter of the case, and Defendant has made no attempt to show that this case is an exception (see § CPL 245.20[1][e]). If the defense believes that there are particular reasons why in this case it needs the ZOLPA form, the defense is always free to make an application for discretionary discovery. 
"Proposed Settlement Offers, Settlement Agreements, Amounts, and Depositions for Civil [*6]Suits Brought Against Testifying Officers":[FN17]

In response to the defense's request for proposed settlement offers, settlement agreements, amounts, and depositions for civil suits brought against testifying officers, the People responded that the People do not have access to these materials, and these materials are not automatically discoverable (see People Opp., at 15). The People are correct. Nowhere does CPL § 245.20(1)(a)-(v) require the disclosure of these items. Indeed, to require the People to produce proposed settlement offers and depositions, among other items, from entirely unrelated civil lawsuits against the police officers involved in a case would be to transform discovery into a virtually impossible task. This material is not core discovery under CPL § 245.20(1)(a)-(v).
"IAB [Internal Affairs Bureau] Log Attachments For All Testifying Officers":[FN18]

Internal Affairs Bureau ("IAB") logs and their attachments are discoverable only to the extent they tend to impeach the credibility of a testifying prosecution witness (see CPL § 245.20[1][k]; People v. Fuentes, — NE3d &mdash, 2025 NY Slip Op 05872, at * 4-5 [Ct App 2025]). It is undisputed that the People turned over the IAB logs for the relevant police officers, which contain the substance of any purported negligence or misconduct by those officers. The defense nevertheless insists that the failure to disclose the attachments to these logs is a basis for the Court to invalidate the People's COC. However, the defense failed to particularize the IAB log attachments it was seeking in its communications with the assigned ADA and continues to fail to do so in the present motion (see Defendant Aff., at Ex. C). Accordingly, the defense fails to show that these IAB log attachments are even discoverable in the first instance, let alone that they amount to a sufficient basis to invalidate the People's COC.
"NYPD Central Personnel Index":[FN19]

Central Personal Indices ("CPIs") contain a variety of information related to police officers. Some of the information may be mundane and otherwise wholly unrelated to the subject matter of the case, but the CPIs also include entries that memorialize any IAB investigations and their outcomes. However, a CPI's memorialization of an IAB proceeding does not automatically render the CPI itself discoverable (see Fuentes, 2025 NY Slip Op. 05872, at * 5 ["Nothing in CPL 245.20(1)(k)(iv) additionally requires the People to disclose every single document referencing impeachment material subject to disclosure based solely on that reference."]). Here, as already noted, it is undisputed that the People disclosed all relevant IAB logs. Thus, the People satisfied their obligation with respect to this material, and absent some further showing by Defendant, there is no basis to conclude that the relevant CPIs are discoverable.
"Online Booking System Arrest Worksheet (Handwritten)":[FN20]

The People stated in their September 15, 2025, conferral email to defense counsel that this document does not exist (see People Opp., at Ex. A). The Court is therefore puzzled to find [*7]it listed in Defendant's motion as a basis to invalidate the People's COC.[FN21]

For all the reasons enumerated above, the Court DENIES the motion to invalidate the People's COC.
II. DEFENDANT'S SPEEDY TRIAL MOTION
The Court makes the following determinations regarding time charged to the People.
June 6, 2025 - July 21, 2025
Defendant was arraigned on June 6, 2025. The matter was adjourned to July 21, 2025, for conversion and the People's COC. This time is charged to the People. (45 days)
July 21, 2025 - September 8, 2025
As of July 21, 2025, the complaint was converted with the filing of a supporting deposition. On that day, the Court deemed the complaint an information, and Defendant was arraigned on the information. The Court adjourned the matter to September 8, 2025, for the People's COC. However, on August 26, 2025, the People filed and served their ADF, COC, and SOR. The People also filed a supplemental COC on September 4, 2025. As discussed above, the Court has found the People's COC to be valid, and therefore their SOR served to stop the "speedy trial clock." Accordingly, only the time between July 21, 2025, and August 26, 2025, is charged to the People. (36 days) 
September 8, 2025 - January 9, 2026
When the parties appeared on September 8, 2025, the Court acknowledged the People's off-calendar filings of the ADF, COC, SOR, and SCOC. The Court set an omnibus motion schedule to include any COC challenge and adjourned the case for decision to November 17, 2025. The case was thereafter administratively adjourned to January 9, 2026, for decision. This time is excludable for motion practice pursuant to CPL § 30.30(4)(a). (0 days)
TOTAL DAYS CHARGED: 81
Because the Court finds that 81 days are chargeable to the People, Defendant's motion to dismiss pursuant to CPL § 30.30 is DENIED.
III. DEFENDANT'S FACIAL SUFFICIENCY CHALLENGE
An information is facially sufficient if the factual section contains allegations of an evidentiary nature demonstrating reasonable cause to believe that the defendant committed the offenses charged (see CPL §§ 100.15, 100.40 [1][b]). The information must be supported by non-hearsay allegations which establish, if true, every element of the charged offenses (see CPL § 100.40[1][c]; People v. Alejandro, 70 NY2d 133, 135 [1987]). Conclusory allegations are insufficient (see People v. Dumas, 68 NY2d 729, 731 [1986]). Ultimately, a court must consider whether both the alleged facts and the reasonable inferences to be drawn from those facts, viewed in a light most favorable to the People, would, if true, establish every element of the crimes charged (see People v. Gonzalez, 184 Misc 2d 262 [App Term, 1st Dept 2000], lv. denied 95 NY2d 835 [2000]).
Defendant contends that the charges are facially insufficient under the First Amendment of the United States Constitution and CPL § 100.40. In Defendant's view, the information fails because it "does not allege speech that is validly prohibited," and does not state a prima facie case that Defendant's "alleged voicemail had no purpose of legitimate communication," as [*8]needed to sustain the charge of Aggravated Harassment in the Second Degree (Defendant Aff., at 37).[FN22]
The Court disagrees with both arguments.
First, speech may only be criminalized when it presents "genuine threats of physical harm," but "an outburst, without more, does not [fall within the scope of criminal harassment]." (People v. Dietze, 75 NY2d 47, 54 [1989]). "A 'true threat' is one that a reasonable person in the victim's position would consider to be an unequivocal statement of intended physical harm." (People v. Lagano, 39 NY3d 108, 112 [2022]).
The information alleges that Defendant sent the complainant a voice note stating, "IAM [sic] GOING TO KILL YOU BITCH." If true, this statement was a personal threat of lethal violence made to the complainant, communicated via the complainant's private device. A reasonable person in the complainant's position could conclude that Defendant's communication was not just an outburst but an unequivocal targeted threat (cf. Lagano, 39 NY3d at 112 [holding that, "The angry tone of the call, defendant's use of profanities to refer to D.D. and her children, and the fact that defendant threatened to use deadly violence all support a finding that the statements were not said in jest."]). Contrary to Defendant's argument (see Defendant Aff., at 38), given the nature of the alleged statement and its delivery to the complainant's personal device, the allegations would, if true, establish every element of the crimes charged when viewed in a light most favorable to the People, and any additional context is not required at the pleading stage (see, e.g., People v. Cesar, 84 Misc 3d 1262(A), at *4 [Crim Ct, Kings County 2024]) ["It remains to be seen whether this alleged conduct will ultimately rise to the level of a true threat when fully contextualized by the evidence and testimony. However, this argument is more suited to trial, when the burden of proof is beyond a reasonable doubt rather than merely a prima facie showing."]). The First Amendment therefore does not provide grounds for dismissal of the charges against Defendant.
Second, the charge of Aggravated Harassment in the Second Degree, PL § 240.30(2), is not facially insufficient. The phrase "no purpose of legitimate communication" as it is used in that charge is understood to mean "the absence of expression of ideas or thoughts other than threats and/or intimidating or coercive utterances." (People v Shack, 86 NY2d 529, 538 [1995]). The accusatory instrument here alleges not only that Defendant threatened the complainant by leaving him a voice note stating, "IAM [sic] GOING TO KILL YOU BITCH," but also that as a result of Defendant's conduct, the complainant experienced annoyance, alarm and fear for his physical safety. 
Thus, the accusatory instrument, construed in the light most favorable to the People, pleads all elements of PL § 240.30(2), to wit, the intent to harass or threaten another person by the making of a telephone call with no purpose of legitimate communication. The cases upon which Defendant relies are distinguishable or unconvincing (see Defendant Aff., at 39-40). Rather, the Court is persuaded by the cases that hold that "[a]n information describing a single call can make out a prima facie case" of PL § 240.30(2) (People v. Williams, 45 Misc 3d 1202[A], *5 [Crim Ct, New York County 2014] [discussing the relevant case law and holding an allegation of "a single threatening telephone call" constituted a facially sufficient information for [*9]purposes of PL 240.30[2]). 
Accordingly, Defendant's facial sufficiency challenge is DENIED.
IV. DEFENDANT'S OMNIBUS MOTION
HEARINGS:
Wade/Dunaway hearing: DENIED. Defendant requests a Wade/Dunaway hearing. The "identification" at issue is the display of a single photo to the complainant, i.e., a non-corporeal identification. Photographic identifications of this nature are not typically subject to Dunaway hearings, and the defense does not assert any facts here that would warrant a departure from this straightforward principle.
Moreover, the accusatory instrument states that Defendant is the complainant's ex-boyfriend, and Defendant and the complainant were in an intimate relationship for seven years. The People reiterate these allegations in their affirmation (see People Aff., at ¶ 5), and Defendant does not dispute them in his motion. These allegations are sufficient to establish that the complainant was familiar enough with Defendant to be impervious to police suggestion (see People v. Guzman, 227 AD3d 450 [1st Dept 2024]; People v. Rodriguez, 47 AD3d 417 [1st Dept 2008]).
Accordingly, the request for a Wade/Dunaway hearing is denied. 
Huntley/Dunaway hearing: GRANTED. Defendant states, "The prosecution has served C.P.L. §710.30 notice of intent to introduce a statement"; however, he fails to detail the substance of the alleged statement and to whom it was made (see Defendant Aff., at 30-31). The People's COC does list statement notice (People's COC at 2), which must have been served on the defense some time after Defendant's Criminal Court arraignment, as it was not filed with the Court at that time and is not presently in the court file. In their response to the present motion, the People do not oppose Defendant's request for a Huntley/Dunaway hearing. In fact, they do not address the request at all. Accordingly, the request for a Huntley/Dunaway hearing is granted.
PRECLUSION: Referred to the trial court.
SANDOVAL/VENTIMIGLIA/MOLINEUX: Referred to the trial court.
CONCLUSION
Defendant's motion to invalidate the COC and dismiss the information pursuant to CPL § 30.30 is DENIED. Defendant's motion to dismiss the information for facial insufficiency is likewise DENIED. The Court DENIES the application for a Wade/Dunaway hearing. Defendant's request for a Huntley/Dunaway hearing is GRANTED. Sandoval/Ventimiglia/Molineux applications are referred to the trial court.
Defendant's application for an extension of time to file additional motions is denied subject to rights under CPL § 255.20(3) to move for further leave upon good cause shown.
The foregoing constitutes the opinion, decision, and order of the Court.
Dated: January 8, 2026
Bronx, New York
SAMUEL L. DAVID, J.C.C.

Footnotes

Footnote 1:Defendant's motion to invalidate the People's COC and dismiss the information was filed as part of Defendant's omnibus motion, which also contains a facial sufficiency challenge and requests various suppression hearings and other relief. Below, the Court denies Defendant's facial sufficiency challenge and also addresses those other applications.

Footnote 2:Defendant filed his motion on September 30, 2025, and the People filed their opposition on October 29, 2025. An initial decision date of November 17, 2025, was set. The case was eventually administratively adjourned to January 9, 2025.

Footnote 3:The Court largely borrows this discussion of CPL Article 245 and the 2025 Amendments from its previous decision, People v. Whitney, —NYS3d— (Crim Ct, Bronx County 2025), 2025 NY Slip Op. 25248 (Crim Ct, Bronx County 2025). As this Court explained in Whitney, 2025 NY Slip Op. 25248, *2, n.3, the revision of New York's criminal discovery rules was the result of long-standing complaints that the prior discovery regime did not adequately protect the rights of criminal defendants. Indeed, robust discovery is both a matter of substantive justice and procedural integrity. It offends basic notions of justice for defendants to be subject to criminal prosecution without being provided the full array of information, documents, and other items central to their cases, whether inculpatory or exculpatory. In addition, in an adversarial criminal justice system, just outcomes are best ensured when defendants and their counsel have a "level playing field."

Footnote 4:Defendant tries to cabin considerations of prejudice, redundancy, and significance by contending these factors "should not be applied when the . . . item(s) at issue have not been disclosed." (Defendant Aff., at 16). This construction of CPL § 245.50(5)(a) relies on a strained interpretation of the words "delayed" and "belated." Furthermore, while the argument may serve Defendant's purposes here, from a broader defense perspective, it is self-defeating and leads to anomalous, unjust results. It also runs counter to the main purposes of discovery reform and the 2025 Amendments, namely, ensuring fairness for defendants and preventing case dismissals for "small discovery errors."
In particular, if the Court were to adopt Defendant's view, the outcome would be perverse in instances where the People have undertaken efforts to secure important discovery but have in fact failed to obtain and disclose it. For example, consider a case in which a defendant is charged with Aggravated Harassment in the Second Degree for sending threatening texts to a complainant; the complainant is in possession of screenshots of those texts; and the People repeatedly request the screenshots from the complainant, including by emails and phone calls and even a subpoena, but the complainant will not provide them to the People. It is hard to imagine a discovery failure more prejudicial to that defendant than the failure to disclose the screenshots. However, in Defendant's view, in this example, a court could not even consider prejudice to the defendant in evaluating the validity of the People's COC because the items remain undisclosed. If that were so, the court considering the People's COC might be forced to hold that the People's efforts to obtain the screenshots rendered the COC valid, no matter how egregious the prejudice to the defendant.

Footnote 5:For example, this Court recently dismissed a case on this ground (see People v. A.S., CR-013637-25BX, Crim Ct, Bronx County December 16, 2025 [invalidating the People's COC and dismissing the information pursuant to CPL § 30.30 where the People failed to timely disclose the text message forming the basis for the Criminal Contempt in the Second Degree charge against the defendant, i.e., a core discovery item]).

Footnote 6:To obtain "discretionary discovery," a defendant must make a showing that "the request is reasonable and that the defendant is unable without undue hardship to obtain the substantial equivalent by other means"; the items or information must "relate to the subject matter of the case"; and the items or information must be "reasonably likely to be material." (CPL § 245.30[3]).

Footnote 7:The parties dispute whether the complainant's phone records have in fact been disclosed. The People represent that they subpoenaed the complainant's phone records prior to filing their COC and disclosed them to the defense on September 4, 2025, with their supplemental COC (see People Aff. at ¶ 10). Defendant claims that he has not yet received the records (see Defendant Aff., at 8). However, defense counsel did not raise the absence of the complainant's phone records with the People in his conferral emails with the assigned assistant district attorney ("ADA") on September 12 and September 17, 2025, although the People expressly stated in their COC that they were awaiting the phone records and then in their SCOC that they had disclosed them (see People Opp., at Ex. A, Defendant Aff., at Ex. B). Because with respect to this issue, defense counsel did not comply with the requirement in CPL § 245.50(4)(c) to confer "regarding the specific and particularized matters forming the basis for [the COC] challenge," and because ensuring the defense has physical possession of the phone records is eminently resolvable without court intervention, the Court will not address this issue further save to say that on the facts presented, the phone records are not a basis for invalidation of the People's COC in any event (cf. People v. Rahman, 79 Misc 3d 129[A] [App Term, 2d Dept 2023], lv denied 40 NY3d 1040 [2023] [non-disclosure of medical records basis to invalidate COC where the records were first subpoenaed after the filing of the People's COC]).

Footnote 8:Defendant Aff., at 18.

Footnote 9:Even if they did involve the complainant, to the extent the complainant was listed as the victim, these would constitute "supplemental discovery" under CPL § 245.20(3), not automatic discovery bearing on the validity of the People's COC, and would be governed by the timeline set forth in CPL § 245.10(1)(b).

Footnote 10:Defendant Aff., at 18.

Footnote 11:See Defendant Aff., at 19-20.

Footnote 12:See https://www.nyc.gov/site/ccrb/policy/MOS-records.page (last visited January 5, 2026); CPL § 245.20(2).

Footnote 13:See Defendant Aff., at 20.

Footnote 14:The closest Defendant comes to particularizing the material he seeks to be unredacted is by stating, "Here, the redactions include prior complaints, prior domestic incidents, possible associates, and more. These are all categories of relevant, discoverable information that go beyond the narrow categories of information that the prosecution is allowed to redact under Article 245." (Defendant Aff., at 20.) As already noted, this statement misunderstands the law as to redactions.

Footnote 15:If there are references to DIRs in which the complainant is listed as a "suspect," the Court directs the People to unredact those items in the entity report; however, even if such references exist, this would not be a basis to invalidate the People's COC.

Footnote 16:Defendant Aff., at 23.

Footnote 17:Defendant Aff., at 22-23.

Footnote 18:Defendant Aff., at 24-26.

Footnote 19:Defendant Aff., at 23-24.

Footnote 20:Defendant Aff., at 22.

Footnote 21:The Court notes that it is not uncommon for police officers to simply fill out an electronic version of the "arrest report" without doing a handwritten version.

Footnote 22:While "no purpose of legitimate communication" is an element of Aggravated Harassment in the Second Degree, PL § 240.30(2), it is not an element of Aggravated Harassment in the Second Degree, PL § 240.30(1)(a), or of Harassment in the Second Degree, PL § 240.26(1).